## HATCH et al.

*v.*

## JOHN C. VAN DERVOORT et al.

1. Where mortgagees of a stock of goods in a leased store building take possession of the stock and continue to occupy the building for the purpose of sale, they are bound by the promise of their attorney to the landlord to pay the rent after they took possession.

2. In such case they are not relieved from paying rent during and on account of the existence of a subsequent order of court restraining the sale pending litigation as to appointment of a receiver and the validity of the mortgages, the goods remaining in the building and being afterwards sold there.

3. Where mortgagees of a stock of goods in a leased store building take possession there of the goods, by permission of the mortgagors, and use the building for displaying and selling the goods, and keeping the ordinary accounts of a retail store, they take possession of and occupy the building as tenants of its owner and not as mere licensees of the mortgagors.

4. Where mortgagees of a stock of goods in a store building under an unexpired lease to the mortgagors, take possession of the goods, and occupy the building for the purpose of sale at retail in the ordinary way, they are liable for the rent stipulated in the mortgagors' lease, and not merely for a *quantum meruit* for use and occupation, though there is no contract with the mortgagees fixing the sum to be paid by them as rent.

5. Where mortgagees of a stock of goods in a leased store building take possession of the goods and occupy the building for the purpose of selling the goods at retail, by permission of the mortgagors and lessees, they cannot avoid liability for rent to the lessor because he did not take proceedings to turn them out of possession and compel them to remove their goods.

6. Where a receiver, by order of court, sells a mortgaged stock of goods kept in a store building leased to the mortgagors, pending litigation as to the validity of the mortgages, and the mortgagees are liable for the rent, the court may direct payment of the rent out of the proceeds of the sale, though the mortgages are valid.

7. Where a receiver sells goods by order of court, one not a party to the prior proceedings, and entitled to the proceeds of the sale, may petition the court for an order to pay the same to him.

On petition of Cornelius F. Van Dervoort to be paid a certain amount for rent out of the fund in court.

*Mr. George S. Hilton,* for the petitioner.

*Mr. Eugene Stevenson,* for the defendants.

PITNEY, V. C.

The petitioner makes the following case: He is the owner of a large shop or store for the retail of dry goods, in the city of Paterson, which, in April, 1895, was held under an unexpired lease by a firm of dry goods merchants named Van Dervoort & Slingland (two of the defendants herein) at a yearly rent which amounted to $308.33 per month, and was payable monthly. At that time the store was filled with a large stock of dry goods, which had cost nearly $30,000.

On the 4th of April Van Dervoort & Slingland, being financially embarrassed and heavily indebted to a bank upon notes endorsed by several of their friends, executed to those friends, eight in number, several chattel mortgages to secure them in the

premises.　The aggregate of the debts was about $24,000.　On the same day, the chattel mortgagees, acting in concert—their mortgages standing on an equal footing as to priority—took formal possession of the chattels as they were then situate in the store of petitioner but did not remove them.　The business of selling the goods at retail continued, by their direction, under the immediate supervision of Van Dervoort & Slingland.

On or shortly after the 4th of April, the complainants in this suit, New York merchants, to whom Van Dervoort & Slingland were indebted for goods sold, brought an action at law against them, with the result that judgment was rendered therein on the 16th of April.　The chattel mortgagees, learning of the suit at law, on the 13th of April, advertised all the goods to be sold at auction, on the premises, on the 18th of April.　In anticipation of judgment being entered against them, Van Dervoort & Slingland made a general assignment for the benefit of their creditors to one Bewkes on the 15th of April.　Before Bewkes had qualified or got possession of the goods the complainants recovered judgment, and on the 16th of April filed their bill of complaint in this court, attacking all the chattel mortgages and praying a receiver.　An order to show cause was granted with interim restraint, the litigation upon which extended to the 10th of July, when a receiver was appointed, who was ordered and directed to proceed to sell the goods, which had all the time remained in the petitioner's store.

The receiver qualified and took possession of the goods and store on the 15th of July, and immediately proceeded to make sale in pursuance of the order, but in the store, with the result that he realized in the neighborhood of $19,000.　Litigation was then had in this court as to the validity of the chattel mortgages, with the result that their validity was sustained.　The petitioner, who was not a party to the suit, intervened by petition, at an early date after the sale, and asked for payment of his rent out of the proceeds from the time the chattel mortgagees took possession until the premises were vacated.　His claim was not resisted as to the time the receiver was in possession, and he was ordered to pay the petitioner rent for the premises after

33

July 15th and until the store was vacated, and the balance of the fund was ordered to be paid to the chattel mortgagees, less a sufficient sum to cover petitioner's demand for rent from the date of the chattel mortgages up to the qualification and entry of the receiver.

One of the chattel mortgagees was a Mr. S., a practicing lawyer in Paterson, who was counsel for Van Dervoort & Slingland, and also for himself and the other chattel mortgagees. In fact, he devised and carried through the whole plan, and acted throughout as the counsel not only for himself but for the other chattel mortgagees.

The petitioner swears that, as soon as the chattel mortgages were put on record and the fact had become known that they had been given, he at once looked after his rent, and inquired of Mr. S. about the rent that was due at that time, amounting to nearly $1,500, and was informed by Mr. S. that as to that rent he had no remedy. He was offered by Van Dervoort & Slingland a bill of sale for all the goods, subject to the chattel mortgages, but declined to receive it. He then inquired, as he swears, as to the rent accruing from that time forward until the store should be vacated, and was assured by Mr. S. that the chattel mortgagees, having taken possession, would be answerable for that rent. This is denied by Mr. S., and I have no doubt that he is honest in his denial, but I find it difficult to suppose that the petitioner, who is of equal credibility with Mr. S., manufactured his evidence upon this point, and it is quite easy to believe that Mr. S. had forgotten that he had made the promise or statement to the petitioner which is testified to by him. It was quite natural that the petitioner should make the inquiry as to future rent, and it was quite as natural, and also reasonable, that Mr. S. should answer as petitioner swears that he did. It was of the utmost importance to the mortgagees that the goods should remain as they were in the store, where they could be sold to the best advantage.

Upon the question of fact as to whether or not a promise was made by Mr. S. to the petitioner, I feel constrained to find that it was made. The fact that petitioner rested quietly, took no

other measures to secure his rent or the possession of his prem-
ises, indicates that he was relying on some arrangement for its
payment, and he swears that he relied on Mr. S.'s promise.

There can be no question that if Mr. S. made such promise—
his authority to do so not being disputed—and petitioner relied
upon it, the mortgagees are bound by it.   It is not a question
of the application of the statute of frauds to a promise to pay a
past debt, but of a promise, on behalf of the promisor, to pay
for use and occupation *in futuro*.

But the mortgagees argue that, admitting the promise to have
been made, still they ought not to be held bound by it beyond
the time when the court intervened and stopped their proceeding
to sell, and that after the 17th of April and until the 15th of
July they were restrained, by the order of this court, from deal-
ing &c. with the goods.   But such restraint did not prevent
them from seeking another place to store the goods, if they could,
at a cheaper rent, and if the order, through inadvertence, could
be so construed, it would have been modified upon application
for that purpose.

There is much force in the suggestion of counsel for petitioner
that, admitting that during the period in question, namely, from
April 17th to July 15th, while the order to show cause with its
interim restraint was in force, the goods were, in a sense, in the
custody of this court for the purpose of being preserved for the
benefit of the parties who should finally be determined to be
entitled, then their storage was necessary for such preservation,
and its expense should fall on the goods.   Under such circum-
stances, there can be no doubt that if proper application had
been made to the court immediately after the order of April 17th
the court would have made immediate provision for the care and
preservation of the goods pending litigation, and would un-
doubtedly have charged the cost thereof upon the goods.

Again, in this connection, it was in the power of the mort-
gagees to have consented at once to the appointment of a receiver,
the result of which would have been the same as if the appli-
cation had been made directly for provision for their care and
custody.   Now, in such case, it is not too much to say that

Hatch v. Van Dervoort.

this court ought now to do that which, if properly moved, it would then have done, especially as petitioner was not a party to the proceedings.

But over and above, and aside from all these considerations, the goods remained in the store, and the mortgagees in the end had the benefit of storage of them there, and of having the goods sold from that place. There can be no doubt that the benefit derived from that privilege was considerable. There was a large amount of goods. It was not suggested that there was any other convenient place in the city of Paterson where they could have been sold, and they were finally, without having to be handled over, packed or repacked, sold at retail from the same store and from the same shelves upon which they rested when the mortgages were made. It cannot be denied that this was a great advantage.

The petitioner relies not only upon the promise of Mr. S., speaking for himself and his clients and the other mortgagees, but upon the fact of the actual occupation and use of the premises by the mortgagees from the middle of April until the middle of July.

In answer to this view of the case, the chattel mortgagees set up that they took possession of the goods only, and not of the store itself, and that they did not become tenants in fact of the petitioner, but that whatever possession they had was by license of Van Dervoort & Slingland, and not as their assignees, and hence that they cannot be considered as having occupied the store in the character of tenants. It seems to me that the circumstances forbid the distinction sought to be taken between the possession of the goods and the possession of the store or rooms. The case shows that the storerooms were used for no other purpose except that of displaying and selling the goods, and keeping the ordinary accounts of a retail store. They were not used for living or sleeping purposes or other occupancy except that of storing, caring for and selling goods, and such use and occupation was complete and not partial. I am unable to see any practical difference between taking possession of the goods and taking possession of the store.

It was further suggested that in the absence of an express contract there was no fixed sum of rent to be paid, and that the legal aspect of the petitioner's claim against the chattel mortgagees is simply that of a *quantum meruit* for use and occupation, which would not warrant a distress or entitle petitioner to be paid the amount of his rent by a sheriff who held an execution against the tenants. But it seems to me that that point is not well taken. The premises were held at a fixed price under an unexpired lease. The chattel mortgagees took possession during that lease with the express consent of the lessees. There is no pretence of ignorance on their part as to the amount of that rent. On the contrary, the proof shows that Mr. S. knew the amount of the rent, and that it was accruing and ought, in justice and equity, to be paid by somebody. Now, it seems to me that if the chattel mortgagees took possession of those premises and occupied them in the manner in which they had been occupied by their mortgagors, they must be presumed to have undertaken to pay the rent at the same rate at which their mortgagors or licensors had paid.

It was further suggested by the chattel mortgagees that the petitioner, by remaining quiet and failing to take any proceedings to dispossess his tenants, the mortgagors, or their licensees, was guilty of such laches and acquiescence as prevented him from making his present claim for rent. To this, among other things, the petitioner answered that he could not safely take summary proceedings to obtain possession. I do not agree with petitioner's counsel in his argument on this point; but I do think that under the circumstances it does not lie in the mouths of the chattel mortgagees to say to the petitioner that because he did not take proceedings to turn them out of possession and compel them to remove their goods (which, as the counsel for the mortgagees says in his brief, would undoubtedly have compelled them to come to some understanding with the petitioner as to rent), that therefore he must be presumed to have intended to give them the use and occupancy of the premises for three months for nothing. In other words, it does not seem to me to lie in the mouths of the mortgagees to say : "If you expected

us to pay you rent you should have taken harsh measures to compel us to agree to pay rent; because you have not done that, you must be held to have given us the rent." It seems to me that there is more plausibility in the argument made by petitioner that the chattel mortgagees, by remaining voluntarily in possession, may be held to have acquiesced in their liability to pay the rent.

Upon a consideration of the circumstances it seems to me that it is inequitable and unjust for the chattel mortgagees to say to the petitioner that the insolvent lessees were his tenants during the period in question, and that they (the chattel mortgagees) were occupying and enjoying the premises as the mere licensees and not the assignees of the lessees, and hence are not liable for the accruing rent; and I conclude that they must be treated in equity as the tenants of the premises at the rent reserved in the lease.

This position being established, the doctrine of *Wood v. Carriage Co., 4 Dick. Ch. Rep. 433,* applies. That was, indeed, the case of a receiver of an insolvent corporation, but the principle established includes any sale by order of this court. The soundness of that case was attacked on the argument, but it is not only an authority binding on me but I think it rightly decided. This court ought not to have the power by mere choice of machinery to affect the rights of third parties, and to deprive a landlord of his statutory right, by issuing a simple order to sell instead of a formal writ under seal. Besides, the appointment of a receiver with power of sale has been properly called an "equitable execution." *1 High Rec. § 2.*

Charging the fund in court with the rent here claimed has the effect merely of reducing the amount which the mortgagees must credit on their mortgage debt from the proceeds of the sale of the goods, and leave the balance unpaid so much larger, while it reduces the amount due from the lessees to the petitioner for rent. The mortgagees have other security for their debts beside the goods sold. The question was argued upon the assumption that the other security would be insufficient to pay them in full.

One other point remains. Exception was taken by the

chattel mortgagees to the standing of the petitioner in this court by mere petition. But there can be no doubt that he has adopted the proper practice. It is perfectly well settled at law that where a sheriff has sold goods by virtue of an execution, and paid the money into court under demand of the landlord, the claim of the landlord will be dealt with by the court of law upon an ordinary affidavit and a rule to show cause. *Fischell* v. *Keer, 16 Vr. 507* (at *p. 511*), where the cases in this state and elsewhere are collected. And if such practice prevails at law, I do not know why it should not prevail also in this court. In fact, it seems to me to be settled practice to proceed by petition on equitable claims against receivers of this court and for moneys deposited in this court, whether the petitioner be a party to the suit or not. The proceeding by petition in this court has a direct precedent in the case of *Wood* v. *Carriage Co., 4 Dick. Ch. Rep. 433.*

I will advise an order that the petitioner be paid his rent from the 4th of April to the 15th of July