HOWARD K. STOKES

*v.*

KNICKERBOCKER INVESTMENT COMPANY et al.

[Decided August 10th, 1905.]

A receiver of a corporation appointed at the suit of the holders of less than one-quarter of the stock will be discharged where it appears that the corporation is not insolvent; the fraudulent procurement of proxies, by which it is alleged the defendants obtained control, is denied, and there is little evidence of it, and an arrangement is made by which the time of maturity of obligations of the corporation shall be extended till after a change in control of the corporation may be made, if the stockholders so desire, and the collateral given to secure such obligations is protected from being sacrificed.

On bill for injunction and receiver.

*Mr. Robert H. McCarter,* attorney-general, for the complainant.

*Mr. Richard V. Lindabury,* for the defendants.

BERGEN, V. C.

The complainant is one of the stockholders of the defendant Knickerbocker Investment Company, the other defendants being Manhattan Bond and Underwriters Company, Henry P. Townsley, Eugene Van Shaick, William Hanhart, John A. Tiger and Ernest W. Shoneberger, all of whom have answered the bill of complaint.

On an *ex parte* application, made at the time the bill of complaint was filed, which, among other things, alleged the insolvency of the defendant Knickerbocker Investment Company, the usual injunction order was made and a receiver of the corporation appointed with power to issue certificates of indebtedness to take up certain obligations of the company, the threatened enforcement of which by the holders thereof, it was alleged, would sweep away all the assets of the company, to the great injury of its creditors and stockholders.

The bill of complaint alleges that the only available assets of the Knickerbocker company are six hundred and twenty-six shares of the capital stock of the Bankers' Life Insurance Company; that in the purchase of this stock the Knickerbocker company incurred a debt which, at the time of the filing of the bill of complaint, amounted to about $44,000; that this indebtedness was represented by promissory notes of the company, to secure the payment of which all the assets aforesaid were assigned as collateral; that the Knickerbocker company was organized in 1902, under the Corporation act of this state, the number of the board of directors being originally fixed at five; that in September, 1903, John A. Tiger and others, directors and officers of the company, obtained sufficient proxies from stockholders to increase the number of this board to fifteen, the purpose being to obtain a board of directors the majority of whom would assist Tiger and his confederates in carrying out the conspiracy then inaugurated as subsequently set out in the bill; that, in furtherance of such conspiracy, Tiger and his associates, by deception, obtained sufficient proxies to control the annual meeting of the Knickerbocker company in January, 1904, and elect a majority of the board in sympathy with them; that in March, 1904, Tiger induced three of these directors to resign, and thereafter procured the election as directors to fill such vacancies the defendants Townsley, Van Shaick and Hanhart; that for the purpose of inducing stockholders to favor increasing the number of directors, Tiger represented that the increase was for the purpose of providing an opportunity to afford representation to different localities where blocks of its stock were held; that in the election of directors

this plan was not carried out; localities in Pennsylvania and New Jersey, in the neighborhood of which resided persons holding together large quantities of this capital stock, were left without representation; that the three persons last named, at the time of their election, promised in writing that they would put in the company from $50,000 to $65,000 in cash, and would take care of the company's obligations by providing funds to carry them; that if they could obtain control of the Bankers' Insurance Company, they would pay dividends on the Knickerbocker stock at the rate of five per cent. within six months thereafter, and would negotiate loans for the Knickerbocker company on a time basis instead of on call. The bill of complaint further charged that when the board of directors of the Knickerbocker company was so reorganized, the notes of that company were held by banks in different localities, guaranteed by the endorsement of stockholders; that the company was without resources to pay interest on or take up the notes if called, and it was vital to the success of the company that its obligations should be protected and the promises made to do so performed, and charges that the defendants, as part of the conspiracy to obtain the assets of the company for their own use, and in violation of their duty, authorized Tiger to take up all of the loans; that $32,000 of such loans was thereupon taken up and replaced by loans in New York City, under the control of Townsley and Van Shaick, without endorsements, but secured by the pledge, as collateral, of the trustees' certificates of the Bankers' Insurance Company's stock, the stock of the latter company having been placed in a voting trust, the owners accepting these certificates as evidence of their title; that to carry out the conspiracy charged, the defendants caused a resolution to be passed by the board of directors that no more stock of the Knickerbocker company should be sold, and as the company had no income, the adoption of this resolution deprived it of all resources and of any method to provide means to pay its obligations; that because of the acts of these conspirators, the company was then in the hands of a group of directors who owned but $8,100 in value out of the $267,000 of capital stock issued; that it had no assets other than the six hundred

and twenty-six shares of the Bankers' company stock; that its obligations amounted to $44,000, carrying interest at six per cent., to secure the payment of which it had pledged as collateral the only asset it had. The bill further charged that, as a part of this conspiracy to obtain the assets of the Knickerbocker company at a price much below its value, the defendants circulated, through the insurance press of the country, and otherwise gave wide publicity to the statement, that there were internal dissensions among the stockholders of the company and improper management by its officers of its affairs. It was further made to appear that the defendants charged as conspirators had caused to be organized, under the laws of the State of New York, a corporation known as Manhattan Bond and Underwriters Company, to be governed by a board of eleven directors, of those elected nine being members of the board of directors of the Knickerbocker company; that this company began business with a paid-in capital of $40,000, the most of which was used in taking up the obligations of the Knickerbocker company, for which it held as collateral nearly all of the stock of the bankers' company, issued to the Knickerbocker company, and it was charged that the acts of the said defendants, as above set out, had in view the calling of the loans due by the Knickerbocker company and the sale, without notice of the collateral, which would result in stripping the Knickerbocker company of all of its assets and the acquirement thereof by these conspirators at a price much below its real value, to the injury of all of the stockholders of the Knickerbocker company, other than those of them who were a part of the combination. As the collateral was in the hands of those persons who, it was charged, intended to privately sell this stock under a pledge made by themselves, on behalf of the Knickerbocker company, to themselves, as directors of the Manhattan company, in a foreign state, not only prompt, but effective action was demanded, the result of which has preserved the property and brought it within the jurisdiction of this court. An application was made to the chancellor by the defendants, based on the moving papers, to discharge the receiver and dissolve the injunction upon the ground that the

action complained of was improvident, but after full hearing this application was denied.

The present motion, made on answer, duly verified, is to have the injunction dissolved upon the ground that the answer meets and overthrows all the facts upon which the equities stated in the bill of complaint are based, and that under the law and the rules of this court, having completely answered the bill of complaint, the preliminary injunction should be dissolved, and as a proper sequence thereto, the receiver discharged. The answer does, as it appears to me, fully answer and deny all the charges of conspiracy and all intention to sell or absorb the assets of the Knickerbocker company, and while it admits that practically all of the assets of the Knickerbocker company have been pledged to the Manhattan company as collateral for loans, it shows that there is sufficient equity in the collateral to provide for the current expenses of the Knickerbocker company for some years to come, and the defendants tender themselves ready to provide such necessary funds upon the strength of the same collateral. The answer and its accompanying affidavits show that the Knickerbocker company was organized, among other things, for the purpose of buying and holding stock in life insurance companies; that in carrying out this object, they purchased, or secured options to purchase, the shares above referred to, which constitute a majority of the capital stock of the Bankers' Life Insurance Company; that at the time of the purchase a voting trust was created by and between the Knickerbocker company of the one part and three persons, who appear to be strangers to the Knickerbocker company, as voting trustees, by the terms of which the stock of the Bankers' company was transferred to said trustees, giving them the exclusive power to vote thereon for a period of five years from and after the date of the agreement, and in lieu of the stock so transferred, the trustees issued to the Knickerbocker company trustees' certificates to represent the stock; that these trustees voted for and elected a board of directors for the Bankers' company, who have appointed one of the trustees as president, at a salary of $6,000 a year, and the complainant as third vice-president, at a salary of $4,000; that

no dividends are at present being paid on the Bankers' company stock, although dividends were regularly paid upon said stock until the said voting trustees acquired control thereof; that at the time the stock was purchased, the Bankers' company was a prosperous one, and charges that if properly managed it would be prosperous still, and that it is for this reason only that the Knickerbocker company is not now in receipt of an income, and that at the expiration of the voting trust, the Knickerbocker company will be able to so manage the Bankers' company as to make it a profitable investment; that with its present assets the holding company will be amply able to meet its current expenses until that time, and thereafter be able, from such income, to repair its losses, for all of which reasons it cannot be said that the Knickerbocker company is insolvent.

That upon this branch of the case insolvency is a jurisdictional requirement is so well settled in this state as to avoid the necessity of citation in support of it.

A careful examination of the papers fails to convince me that the internal dissensions between the officers of this company and its stockholders have reached any such point as to require the intervention of this court. Manifestly the present board of directors is supported by a large majority of the stockholders. Out of a par value of $267,000, only $60,000, approximately, have intervened and asked to be permitted to be made parties complainant with the original complainant, and the presumption is that the residue, amounting to $200,000, are in sympathy with the management of the board of directors. This important fact cannot be overlooked in determining the question whether the dissensions in the company have reached the point demanding interference. Such a contest as this, provoked by a minority of stockholders, would constantly arise if the court should say that the protest of every dissatisfied stockholder was a basis for such internal dissensions as to warrant a receivership.

The situation, as disclosed by this bill and answer, is substantially this: In a contest for the control of the Knickerbocker company, the complainant and his allies were defeated. They charge it was because proxies were obtained by some of the de-

fendants through misrepresentation to the stockholders granting them, and that by reason of the power so acquired, the defendants intend to fraudulently dispose of and secure for their own use all the property of the Knickerbocker company. The fraudulent procurement of these proxies is denied, and but very little evidence has been produced to support the charge. It is not disputed that the only business of this company is the holding of the capital stock of the Bankers' company, and it is impossible to sustain the allegation of insolvency, therefore, if the threatened disposition of the assets of the company is prevented until the stockholders, at a meeting to be called, or at their next regular meeting, can have an opportunity, either by a proper resolution or the election of a new board of directors, to express their wishes, the complainant will have secured all the judicial protection he is entitled to under the circumstances here existing.

The only matter contained in the bill of complaint of vital consequence to complainant is the alleged apprehension that the present holder of the collateral, the Manhattan company, being a foreign corporation, may at any time call the loans and sacrifice the collateral by a private sale of it. But that company, on the argument, professed its willingness to accept from the Knickerbocker company, in lieu of its present obligations, new evidences of the indebtedness, postponing the maturity of the loans until after the expiration of the voting trust. That offer, made in open court by parties who have answered and thus submitted themselves to the jurisdiction of the court, is one that may be availed of in disposing of this matter, and thereby the real danger of injury to the complainant averted.

If the defendants, the Knickerbocker company, the Manhattan company, and any other defendant holding obligations of the Knickerbocker company, collaterally secured by the stock of the Bankers' company, will convert the present obligations of the Knickerbocker company into others that shall not mature during the life of the voting trust, and will incorporate in a written instrument pledging the stock of the Bankers' company as collateral a stipulation that the collateral stock shall not be sold except at auction in some public place, after fifteen days' public

advertisement, and upon due notice to the stockholders of the Knickerbocker company, I will advise an order discharging the receiver and dissolving the injunction. Under the circumstances, I think the reasonable expenses of the receiver should be paid by the Knickerbocker company.