In the matter of CHARLES H. SULK, alleged to be a lunatic.

[Decided August 4th, 1908.]

1. If, under proceedings on a commission in the nature of a writ *de lunatico inquirendo*, the subject of the inquisition is found to be of sound mind, the person petitioning for and prosecuting the commission of lunacy is entitled to costs, including counsel fee, and expenses reasonably and properly incurred; provided the prosecutor of the inquisition has acted from justifiable motives and in good faith, and there is a fund under the control of the court out of which payment can be ordered to be made.

2. When, upon the application for a commission in the nature of a writ *de lunatico inquirendo* a case is made which moves the court to appoint a receiver *pendente lite*, and afterwards upon the inquest the subject of the inquisition is found to be of sound mind, the court will, in discharging the receiver, allow him compensation for his services, and will allow the petitioner the taxed costs of the proceedings, including a reasonable counsel fee, and expenses reasonably and properly incurred.

On application for payment of costs, &c.

*Mr. Clarence Kelsey,* for the petitioner.

*Mr. Marshall Van Winkle,* for the respondent.

WALKER, V. C.

On April 21st, 1908, Josephine Sulk filed a verified petition in the above-stated matter praying that a commission in the nature of a writ *de lunatico inquirendo* might issue out of this court to inquire into the alleged lunacy of her husband, Charles H. Sulk, and, on allegations in the petition, abundantly verified by affidavits, to the effect that Sulk was improvidently giving away and wasting his money and property, John S. Mc-Master, Esq., was appointed receiver *pendente lite,* and a commission was issued to Frank P. McDermott, Esq., master in chancery, Dr. John C. Parson and Mr. John E. Muller, in the usual form, to inquire into the alleged lunacy of Sulk. Mr. McMaster qualified as receiver and took possession of the real and personal property of Mr. Sulk.

The inquisition was held on June 11th and 12th, 1908, Sulk, who had escaped from the Morris Plains Hospital for the Insane, being absent. The jury empaneled in the matter found that Sulk was capable of governing himself and his affairs, and the commission has been duly returned.

The present application is for an order upon the receiver to pay the bills of the petitioner's solicitor and counsel in the lunacy proceedings and also the physicians' bills and other expenses therein.

The inquisition was conducted on June 11th, 1908, from ten o'clock in the morning until five o'clock in the afternoon, and

on the next day from ten o'clock in the morning until after two o'clock on the following morning. The respondent, Sulk, is the owner of real and personal property aggregating many thousands of dollars, and his estate is abundantly able to respond for the costs and expenses of these proceedings.

Two questions arise—*first,* has the court the power to order the payment asked for, and *second,* are the amounts asked for reasonable?

The solicitor and counsel of the petitioner asks for a fee of $500, and attaches a bill of items of his services to the petition. It appears that he did a great deal of exacting work in the matter and that very much time was consumed in his labors. Dr. Baldwin has presented a bill for $10, Dr. J. Henry Clark for $50 (including services in court), and Dr. H. J. Bogardus $25 (including services in court). I deem all of the bills to be reasonable, and the question therefore recurs, has the court the power to order their payment out of the estate of the respondent in view of the fact that no office has been found?

It is entirely settled that where the alleged lunatic is found to be of sound mind, or the commission is superseded before a guardian is appointed, the petitioner cannot be allowed costs and expenses, no matter how meritorious the proceeding, where there is no fund out of which payment can be made. *In re Farrell, 51 N. J. Eq. (6 Dick.) 353.*

It appears therefore that the allowances asked for cannot be made unless there be a fund out of which they can be paid.

Chancellor McGill in *In re Farrell* commences his opinion by the statement that Chancellor Green, *In the matter of Curlis White, 17 N. J. Eq. (2 C. E. Gr.) 274,* being satisfied that the proceedings had been instituted in good faith for the benefit of the lunatic, denied the motion for costs, remarking that in such case the petitioner, in justice, should be allowed costs, whether the lunacy established or not, adding, however, that if the party be found of sound mind or the commission be superseded before a guardian appointed, the prosecutor cannot be allowed costs, however meritorious his conduct, there being no fund out of which their payment can be directed.

The law in our state upon this subject is the same as that which obtained in England prior to the statute of Victoria. We have no statute upon the subject of the present inquiry, and the rule laid down in the English authorities is apposite here. In *Ex parte Ferne, 5 Ves. 832,* the subject of the inquisition was found to be of unsound mind, and, upon a traverse of the inquisition, was found to be sane, and the commission was thereupon superseded. The petitioners asked for costs, claiming to have established lunacy at the time of the inquisition. Lord-Chancellor Loughbrough denied the application because there was no fund out of which payment could be ordered, and he remarked: "If I could act *cum imperio* it is a very proper case, and the parties have entitled themselves to all the costs I can give them, but I have no jurisdiction." In *Sherwood* v. *Sanderson, 19 Ves. 280,* on application for costs after office found, but, before the determination of the traverse, Lord Eldon remarked, that no grant of the custody of the person or estate could be made, and the person issuing the commission, if there be no funds in his hands, cannot make an order as to costs.

*In the matter of Curtis White, ubi supra,* there was an application by the subject to the inquisition, who was found to be of sound mind, for costs to be visited upon the party who took out the commission, who was his son, and who prosecuted it from proper motives and in good faith. Chancellor Green denied the motion, and observed (at *p. 277*) : "A person petitioning for, and prosecuting a commission of lunacy, is entitled to be repaid the costs he shall have properly so incurred. But if the party be found of sound mind, or the commission be superseded before a guardian is appointed, the prosecutor cannot be allowed his costs, however meritorious his conduct may have been, there being no fund out of which the chancellor can direct them to be paid;" and further, "the proceeding being instituted for the benefit of the alleged lunatic or his estate, the petitioner is, in justice, entitled to be repaid his costs reasonably incurred, whether the lunacy be established or not. It is true that where the party is found of sound mind, the prosecutor cannot be allowed his costs, because there is no fund out of which they can be paid."

Thus it appears that both in this state and in England we have direct and positive statements by the courts to the effect that the petitioner in a lunacy proceeding, if acting from justifiable motives and in good faith, is entitled to an award of costs and expenses out of the estate of the subject of the inquisition, even if he be found of sound mind, provided there be a fund within the jurisdiction of the court out of which the award can be made. I cannot otherwise read these expressions: "If I could act *cum imperio* it is a very proper case, and the parties have entitled themselves to all the costs I could give them," *per* Lord-Chancellor Loughbrough in *Ex parte Ferne.* "It is impossible to make any order about the costs, as there is no fund upon which they can attach," *per* Lord-Chancellor Eldon in *Sanderson* v. *Sanderson.* "The petitioner is, in justice, entitled to be repaid his costs reasonably incurred, whether the lunacy be established or not," *per* Chancellor Green, *In the matter of Curtis White.* "There being no office found, and neither guardian nor fund in prospect, there should be no allowance of expenses in the lunacy proceedings," *per* Chancellor McGill, *In re Farrell.*

If the proceedings in this matter had resulted in office found, then, under our statute and practice, it would be for the guardian, when appointed by the orphans court, to pay the costs and expenses of the litigation. *In re Farrell, 51 N. J. Eq. (6 Dick.) 360.*

Now, there is a fund under the control of this court in this matter, namely, the property in the hands of the receiver appointed upon the presentation of the petition for the commission. Ought the fund to be turned back to Mr. Sulk without being tolled for the legitimate costs and expenses of the lunacy proceedings, or should those disbursements be ordered out of the fund before it is restored to its owner? The court undoubtedly acted within its power in appointing the temporary receiver. *In re Runey Dey, 9 N. J. Eq. (1 Stock.) 181; In re Devausney, 52 N. J. Eq. (7 Dick.) 502, 507.* There was an abundance of proof by way of affidavits annexed to the petition to justify the appointment. In fact, counsel for the respondent arguing here against the allowance of expenses did not question the propriety of the appointment, and consented that the receiver be paid for his ser-

vices in the matter. I take it that the court has the power to compensate the receiver irrespective of the consent, for the right to appoint a temporary receiver presupposes that the appointment may be vacated upon full hearing. If such be the consequence, that is, if the receivership goes down upon the hearing, it does not follow that the petitioner procuring the appointment shall be mulcted in costs. If then the court has the right to allow the receiver's compensation, it has, I take it, equal right to allow the costs and other expenses of the proceedings in which the receiver was appointed; and certainly so in this class of cases, under the authorities to which reference has been made.

In *Sewell* v. *Cape May and Somers Point Railroad Co., 9 Atl. Rep. 785,* a receiver was appointed by this court for the defendant as an insolvent corporation on the return of an order to show cause. The defendant afterwards answered and moved to dissolve the injunction and to dismiss the bill. The court again declared the company insolvent within the meaning of our act, but since the company by its answer declared its ability to pay all its obligations, and manage its affairs successfully, it was ordered that if it produced in court moneys sufficient to pay and discharge its liabilities, including all reasonable costs and expenses of the receiver and his just commissions and the costs of suit, the receiver would be discharged. This was in a case in which it was shown that there was real foundation for the appointment of a receiver, but, to my mind, it is an authority showing that whenever the court takes property into its custody through a receiver it will protect him and order the payment of the costs of the proceedings. The power to appoint a receiver is at least as high, or a higher power, than the power to toll the fund in the receiver's hands for compensation and the costs of the litigation in which he was appointed. The one power, it seems to me, follows the other.

In *Baker* v. *Baker, 36 N. Y. App. Div. 485,* it was held that by the dismissal of the complaint the court does not lose jurisdiction over funds in the hands of a receiver theretofore appointed in the action. In *Whiteside* v. *Prendergast, 2 Barb. Ch. 471,* it was held that the discontinuance of a suit does discharge a receiver appointed therein, but will entitle him to apply for his discharge and to have his accounts passed, so that he may pay over the bal-

ance, if any, in his hands, and exonerate himself and his sureties from further liability.

The petitioner will be allowed her taxed costs and the counsel fee and expenses contained in the schedule annexed to her petition therefor. The fee of the receiver will be fixed on application and upon notice.