The receiver in this case, duly appointed by the court, applied to confirm a public auction sale of the defendant corporation to one Thomas P. Argyris for $9,000. Argyris also held a chattel mortgage on the assets, the validity of which was challenged by the receiver. The receiver applied to the court for leave to sell the assets free and clear of the lien of the chattel mortgage, the lien, if any, to attach to the proceeds. On the return of the rule the mortgagee offered no objection, but asked the court to pass upon the validity of the mortgage, first, so he would know how to bid at the sale. The court adjudged the mortgage valid and the mortgagee consented to the sale of the assets free and clear of the lien of his chattel mortgage, the lien to attach to the proceeds. *Page 154 
The court approved the terms and conditions of the sale, which provided, among other things, that the purchaser should pay a deposit of twenty-five per cent. at the time of the sale and the balance upon the delivery of the goods, and that the sale was subject to the confirmation of the court. The assets were sold to Argyris for $9,000. The receiver did not have funds with which to pay administration expenses, including receiver's allowances, and for the use and occupation of the premises during the receivership, and applies to the court to have the said mortgagee, and successful bidder at the auction, pay reasonable allowances to him, his counsel, appraisers' fees and for rent, instead of the $9,000 bid at the sale.
It should be noted the receiver has conducted the restaurant business since the time of his appointment, on July 3d 1924, by order of the court, and with the knowledge and consent of the mortgagee. It was agreed by all parties that the closing of the business would destroy its value and the value of the mortgagee's security. The receiver conducted the business carefully and to the great advantage of the estate. When he took it over it was a losing proposition. By his constant and careful attention he made it a going concern, so that it finally became an earning proposition of approximately $150 or $200 a week. On July 14th the court made a rule, with interim restraint, restraining the mortgagee from foreclosing the chattel mortgage without the consent of the court. The mortgagee did not apply to the court for leave to foreclose or for leave to modify, thereby acquiescing in the rule. The receiver was allowed $1,800 by the court for himself and counsel, $50 each for appraisers, said mortgagee to pay or assume the payment for the use and occupation of the premises during the receivership, and to pay auctioneer's expenses.
The question before the court now is: Are the expenses of administration entitled to priority in payment over the chattel mortgage? Sections 85 and 86 of the Corporation act provide as follows: *Page 155 
"Before distribution of the assets of an insolvent corporation among the creditors or stockholders, the court of chancery shall allow a reasonable compensation to the receiver for his services and the costs and expenses of the administration of his trust, and the costs of proceedings in said court, to be first paid out of said assets.
"After payment of all allowances, expenses and costs, and the satisfaction of all special and general liens upon the funds of the corporation to the extent of their lawful priority, the creditors shall be paid proportionately to the amount of their respective debts, excepting mortgage and judgment creditors, when the judgment has not been by confession for the purpose of preferring creditors."
In Attorney-General v. Linden Cemetery Asso., 90 N.J. Eq. 404,
the receiver did not have enough money to pay allowances to himself and counsel. Vice-Chancellor Backes permitted him to use funds derived from the sale of lands to defray his allowances and the allowances of his counsel, even though the vendor of said lands claimed an unpaid vendor's lien. He says: "The rule is thoroughly settled that when a court of equity takes possession of property for the purpose of protecting and preserving it for the benefit of the parties interested, the costs of administration are entitled to priority of payment, regardless of the nature of the liens and claims thereon of the litigants. This is so fundamental to the administration of justice and so generally recognized that citation of authority is unnecessary." This was affirmed by the court of errors and appeals, and appeared per curiam, 91 N.J. Eq. 329.
In Jeffers v. New Jersey and Pennsylvania Railroad Co.,86 N.J. Eq. 68, the court made allowances to the receiver and counsel, but the receiver did not have sufficient money to pay the same, and Vice-Chancellor Howell said that on both principal and authority the compensation of the receiver and his counsel must be paid in full out of the fund in the receiver's possession, citing Chesapeake and Ohio Railway v. AtlanticTransportation Co., 62 N.J. Eq. 751. This was approved by the court of errors and appeals, 86 N.J. Eq. 402. See, also,Lembeck v. Jarvis Terminal Cold Storage Co., 68 N.J. Eq. 352.
The United States circuit court of appeals, in Provident Lifeand Trust Co. v. Camden and Trenton Railway Co.,177 Fed. Rep. 854, followed the *Page 156 
above case, and said (at p. 862): "The receiver's control undoubtedly conserved the mortgaged property and kept it intact as a going concern." The court allowed compensation to the receiver over pre-existing valid mortgages.
In re Sulk, 74 N.J. Eq. 736, Chancellor Walker, then vice-chancellor, discharged a receiver appointed in lunacy proceedings, upon finding that a man was of sound mind, but allowed receiver compensation for his services, the petitioner the taxed costs of the proceedings, including a counsel fee, and expenses reasonably and propertly incurred. See, also, 23 Rul.Cas. L. 109 § 119; Pom. Eq. Rem. (2d ed.) § 1641; HighRec. (4th ed.) 961, 962 § 809; 1 Clark Rec. (18th ed.)886; Atlantic Trust Co. v. Chapman, Receiver, 208 U.S. 360; 34Cyc. 351; Hatch v. Van Der Voort, 54 N.J. Eq. 511.
Also, Stokes v. Knickerbocker Investment Co., 70 N.J. Eq. 518,
on an ex parte application; upon the hearing it appeared that the receiver should be discharged, and the court declined to continue the receivership. Nevertheless, Mr. Justice Bergen, then vice-chancellor, said that the reasonable expenses of the receiver should be paid by the defendant company. Also, seeSewell v. Cape May S.P.R.R. Co., 9 Atl. Rep. 785.
On this statement of the law, I am of the opinion that the receiver should be paid his reasonable and proper allowances out of the funds before any distribution is made. If it were not so, the court would not be able to protect its appointees, who, on their appointment, become officers of the court, and as such are entitled to the court's protection. If a receiver cannot be assured of reasonable compensation, it would be difficult for the court to get proper men to occupy these positions. It may be in any receivership matter that the court of errors and appeals would say that the receiver was improvidently appointed, but, in my opinion, the court would protect the receiver thus appointed if the court had jurisdiction to make the appointment, and the receiver had discharged his duties in a manner which convinced the court that he should have reasonable compensation. *Page 157 
I shall therefore find that the receiver is entitled to his allowances according to the order in this matter heretofore advised.
It should be noted that the order has since been complied with, although the allowances and rent were paid to the receiver under "protest," and the receiver has delivered possession of the assets to Argyris, and has also delivered a bill of sale to him.