In this case a commission was appointed at the request of Mr. Gleason's wife to inquire into his sanity. A jury of *Page 436 
twenty-four men was assembled, and at the conclusion of the trial, which lasted six days, continuously, they unanimously found Mr. Gleason sane. The commissioners, however, disagreed with the finding, and filed a memorandum declaring that, in their opinion, Mr. Gleason is insane.
The question now before this court is on a motion to have the expenses of the inquiry fixed and assessed. The controlling case on the subject is that of In re Sulk, 74 N.J. Eq. 736. The opinion is by Chancellor Walker, then vice-chancellor. The syllabus reads as follows:
"If, under proceedings on a commission in the nature of a writde lunatico inquirendo, the subject of the inquisition is found to be of sound mind, the person petitioning for and prosecuting the commission of lunacy is entitled to costs, including counsel fee and expenses reasonably and properly incurred, provided the prosecutor of the inquisition has acted from justifiable motives and in good faith and there is a fund under the control of the court out of which payment can be ordered to be made."
The first question is whether Mrs. Gleason, the wife in the case at bar, who filed the petition — and it should be noted that in the Sulk Case the wife filed the petition against the husband as in this case — acted from justifiable motives and in good faith. I am confident that she did.
I have read the voluminous testimony in this case and it clearly shows that Mrs. Gleason was justified in making an application for the commission. It is important to consider the entire testimony, and if there be an appeal I shall direct that the evidence taken before the commissioners and jury be printed in full.
Mr. Gleason and his counsel admitted that at one time he was mentally ill, but afterwards recovered. The commissioners, men of the highest standing, disagreed with the jury, and stated that, in their opinion, he had not so recovered.
An application was made to set aside the verdict, and in an opinion heretofore filed, which was concurred in by Vice-Chancellor Backes, who kindly consented to sit with me in the matter, I decided not to disturb it. *Page 437 
The second question is, Was there a fund under the control of the court out of which payment for these services can be made? I am somewhat surprised at the attitude of counsel when they say that because a receiver was not actually appointed there is no fund under the control of this court.
The circumstances in regard to this are that an application was made by counsel for Mrs. Gleason to appoint a receiver. On the plea of counsel for Mr. Gleason that a receivership might lead to unpleasant notoriety and might affect the business in which he is engaged, and at his counsel's suggestion, it was agreed that instead of appointing a receiver, Mr. Gleason should voluntarily convey to a trustee, appointed by the court, his personal property. This he did by an instrument signed by him and acknowledged by his counsel, in which he turned over certain securities to the trustee, and which deed of trust recites that "the trustee is to hold the said property pending the proceedings to determine my sanity and such order that the court of chancery may, in the future, make." I shall hold that there is a fund under the control of this court from which these expenses can be taken.
Third. Are the costs, expenses and counsel fees which I have assessed, reasonable and within the ability of the defendant to pay? The commissioners are of the highest standing, men of affairs and with large personal interests. They sacrificed these for six consecutive days, and it should be noted that this means a great deal more than taking one day a week for a number of weeks. The same is true as to the services of counsel. I believe the allowances I have made are reasonable and moderate. Are they within the ability of the defendant to pay without serious inconvenience and financial loss to himself? The jury having decided that Mr. Gleason is sane, and this court having declined to set aside the verdict, the question of Mr. Gleason's financial ability cannot be better determined than by a consideration of his own testimony before the commission and jury as to his assets and income. The lowest estimate, as the testimony *Page 438 
will reveal, was $740,000. I do not think that allowances of approximately $8,000 are excessive.
I find the prosecutor, having acted from justifiable motives and in good faith, and there being a fund under the control of this court from which allowances can be made, that the costs are reasonable and commensurate with Mr. Gleason's income. They must be paid by him.